IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

SODA MOUNTAIN WILDERNESS COUNCIL;
OREGON WILD; KLAMATH SISKIYOU                1:12-cv-1171-CL
WILDLANDS CENTER; CENTER FOR
BIOLOGICAL DIVERSITY; and CASCADIA           **ORDER**
WILDLANDS PROJECT,

        Plaintiffs,

  v.

UNITED STATES BUREAU OF LAND
MANAGEMENT,

        Defendant,

MURPHY COMPANY,

        Defendant-Intervenor.

**PANNER, District Judge:**

    Plaintiffs claim that the U.S. Bureau of Land Management

(BLM) violated the National Environmental Policy Act (NEPA) and

1  - ORDER

the Federal Land and Policy Management Act (FLPMA) by proceeding with the Cottonwood Forest Management Project, a timber sale that would allow logging on 1,108 acres of BLM-managed forest near Ashland, Oregon.

Plaintiffs now seek a preliminary injunction to halt the Cottonwood timber sale.  I deny the motion.

### BACKGROUND

The Cottonwood timber sale is on "Matrix" land, which is land designated by the Northwest Forest Plan[1] as "'unreserved areas . . . in which timber harvest may go forward subject to environmental requirements.'"  Or. Natural Res. Council Fund v. Brong, 492 F.3d 1120, 1126 (9th Cir. 2007) (quoting Seattle Audubon Soc'y v. Lyons, 871 F. Supp. 1291, 1305 (W.D. Wa. 1994), aff'd, 80 F.3d 1401 (9th Cir. 1996) (per curiam)).  Portions of the timber sale area are governed by the Oregon and California Lands Act (O&C Act).  43 U.S.C. § 1181a.  For land subject to the O&C Act, "the primary use . . . is for timber production to be managed in conformity with the provision of sustained yield."  O'Neal v. U.S., 814 F.2d 1285, 1287 (9th Cir. 1987); Headwaters, Inc. v. BLM, 914 F.2d 1174, 1183 (9th Cir. 1990).

BLM issued a revised Environmental Assessment (EA), which

---

[1] The "Northwest Forest Plan . . . establishes consistent management of federal lands within the range of the northern spotted owl."  LOWD v. U.S. Forest Serv., ___ F. Supp. 2d ___, 2012 WL 3255083, at *15 n.25 (D. Or. Aug. 10, 2012)

2 - ORDER

explains the objectives of the Cottonwood timber sale.  The EA
states that the sale is intended (1) to ensure sustainable forest
production by managing forests to improve forest vigor and
growth, and to reduce the risk of loss from animals, insects, and
disease; (2) to supply forest products from Matrix lands; (3) to
maintain stand structure for nesting, roosting, foraging, and
dispersal habitat within spotted owl habitat; and (4) to maintain
a transportation system in the sale area.

BLM issued a Finding of No Significant Impact, concluding
that it did not need to prepare an Environmental Impact
Statement.  BLM authorized the Cottonwood timber sale with a
Decision Record, and later awarded the timber sale to intervenor-
defendant Murphy Co.

<strong>LEGAL STANDARDS</strong>

## I.  Preliminary Injunctions

The party seeking a preliminary injunction "must establish
that he is likely to succeed on the merits, that he is likely to
suffer irreparable harm in the absence of preliminary relief,
that the balance of equities tips in his favor, and that an
injunction is in the public interest."  Winter v. Natural Res.
Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary
injunction is an extraordinary remedy never awarded as of right."
Id. at 24.

3 - ORDER

## II.  Judicial Review under the Administrative Procedure Act

Under the Administrative Procedure Act (APA), this court may
set aside a federal agency's decision if the decision is
"arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law . . . ."  5 U.S.C. § 706(2)(A).  An
agency's decision is arbitrary and capricious if the agency

> relied on factors Congress did not intend it to
> consider, entirely failed to consider an important
> aspect of the problem, or offered an explanation that
> runs counter to the evidence before the agency or is so
> implausible that it could not be ascribed to a
> difference in view or the product of agency expertise.

Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en
banc) (internal quotation marks omitted), overruled in part on
other grounds by Winter, 555 U.S. 7.  Before a court may overturn
an agency's decision under this standard,

> the court must consider whether the decision was based
> on a consideration of the relevant factors and whether
> there has been a clear error of judgment.  Although
> this inquiry into the facts is to be searching and
> careful, the ultimate standard of review is a narrow
> one.  The court is not empowered to substitute its
> judgment for that of the agency.

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416
(1971) (citations omitted).

## III.  Judicial Deference to Agency Expertise

In Lands Council, the en banc Ninth Circuit provided
guidance for the judicial review of agency decisions, which is
particularly applicable to environmental actions.  Courts must
defer to an agency's analysis when the agency's resolution of the

4 - ORDER

issue required "'a high level of technical expertise.'" <u>Lands</u>
<u>Council</u>, 537 F.3d at 993 (quoting <u>Selkirk Conservation Alliance</u>
<u>v. Forsgren</u>, 336 F.3d 944, 954 (9th Cir. 2003) (further citation
omitted).  Courts should be at their most deferential when the
agency is "'making predictions, within its [area of] special
expertise, at the frontiers of science.'" <u>Id.</u> (quoting <u>Forest</u>
<u>Guardians v. U.S. Forest Serv.</u>, 329 F.3d 1089, 1099 (9th Cir.
2003) (brackets in <u>Lands Council</u>)).  Courts may not impose their
own ideas "'of which procedures are "best" or most likely to
further some vague, undefined public good.'" <u>Id.</u> (quoting
<u>Churchill County v. Norton</u>, 276 F.3d 1060, 1072 (9th Cir. 2001)
(further citation omitted)).  Courts also may not impose
procedural requirements that are not "'explicitly enumerated in
the pertinent statutes.'" <u>Id.</u> (quoting <u>Wilderness Soc'y v.</u>
<u>Tyrrel</u>, 918 F.2d 813, 818 (9th Cir. 1990)).

## DISCUSSION

## I.  Plaintiffs Fail to Show Likelihood of Success on the Merits

Plaintiffs bring claims under NEPA and FLPMA.

### A. NEPA Claims

"Congress enacted NEPA 'to protect the environment by
requiring that federal agencies carefully weigh environmental
considerations and consider potential alternatives . . . before
the government launches any major federal action.'" <u>Ctr. for</u>
<u>Biological Diversity v. Salazar</u>, ___ F.3d ____, 2012 WL 3570667,

5 - ORDER

at *18 (9th Cir. Aug. 21, 2012) (quoting <u>Barnes v. U.S. Dep't of</u>
<u>Transp.</u>, 655 F.3d 1124, 1131 (9th Cir. 2011) (internal quotation
marks omitted)).  "As a preliminary step, an agency may first
prepare a less exhaustive EA, which is a 'concise public
document' that '[b]riefly provide[s] sufficient evidence and
analysis for determining whether to prepare an environmental
impact statement [EIS].'"  <u>Id.</u> (quoting 40 C.F.R. § 1508.9(a)).
Here, after preparing the EA, BLM determined the Cottonwood
timber sale would not have a significant environmental impact, so
it issued a Finding of No Significant Impact (FONSI), rather than
drafting an EIS.

### 1.  Range of Alternatives

The EA analyzed two alternatives:  a no-action alternative,
and the chosen alternative.  Plaintiffs contend BLM improperly
failed to consider other reasonable alternatives.

Under NEPA, federal agencies must "study, develop, and
describe appropriate alternatives to recommended courses of
action."  42 U.S.C. § 4332(2)(E).  Although this requirement
applies whether the agency prepares an EIS or an EA, the agency's
obligation to consider alternatives in a EA "'is a lesser one
than under an EIS.'"  <u>Ctr. for Biological Diversity</u>, at *18
(quoting <u>Native Ecosystems Council v. U.S. Forest Serv.</u>, 428 F.3d
1233, 1246 (9th Cir. 2005)).  For an EIS, the agency must
"[r]igorously explore and objectively evaluate all reasonable

6 - ORDER

alternatives," while for an EA, NEPA requires only "a brief
discussion of reasonable alternatives." Id. (quoting N. Idaho
Cmty. Action Network v. U.S. Dep't of Transp., 545 F.3d 1147,
1153 (9th Cir. 2008) (further citations and quotation marks
omitted)).  The EA at issue here, about 200 pages long, is quite
comprehensive.

Plaintiffs argue that BLM drafted the EA's objectives so
narrowly that road construction was inevitable.  BLM responds
that the EA's objectives include access to timber and the
provision of forest products from Matrix lands, as well as
improving roads and habitat.  Defendants argue that without new
roads, two of the units would be accessible only by helicopter
logging, which would not be economically feasible.  An EA "need
only discuss alternatives that advance the purpose of the
project."  Barnes, 655 F.3d at 1136.

Defendants also argue that because several of plaintiffs'
suggested alternatives have consequences similar to the no-action
alternative, NEPA does not require a separate analysis.  See N.
Plains Res. Council v. Lujan, 874 F.2d 661, 666 (9th Cir. 1989).
For example, this is true of plaintiffs' alternative of no
logging in designated critical habitat for the spotted owl, which
includes about 135 acres out of the 1,108 total acres in the
sale.  BLM necessarily considered this option when it analyzed
the no-action alternative, and BLM designed the sale to maintain

current spotted owl habitat.

I conclude plaintiffs are unlikely to prevail on their claim that BLM failed to consider a reasonable range of alternatives. The Ninth Circuit recently noted, "we are aware of no Ninth Circuit case where an EA was found arbitrary and capricious when it considered both a no-action and preferred action alternative." Earth Island Inst. v. U.S. Forest Serv., 2012 WL 4125866, at *11 (9th Cir. Sept. 20, 2012); Ctr. for Biological Diversity, at *19 ("We have previously upheld EAs that gave detailed consideration to only two alternatives.").

### 2.  Cumulative Effects

"An EA must fully assess the cumulative impacts of a project." Barnes, 655 F.3d at 1141.  The regulations define a cumulative impact as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions."  40 C.F.R. § 1508.7.

Here, plaintiffs argue BLM did not adequately consider the cumulative effects of previous logging and road building in the sale area.  Plaintiffs also argue the EA improperly failed to consider the effects of two planned timber sales, the Rio Climax and Shale City timber sales.  (For this motion only, I assume plaintiffs did not waive their NEPA claim as to the Rio Climax

8 - ORDER

sale.) Plaintiffs argue the EA should have considered whether the Cottonwood sale area is slated for inclusion in the Cascade-Siskiyou National Monument, and whether particular sale units have wilderness characteristics.

BLM responds that the EA thoroughly discusses relevant cumulative effects. For example, the EA does address the effects of previous logging and road building, and analyzes the effects of soil compaction and sedimentation.

BLM states that it need not analyze the effects of the other timber sales cited by plaintiffs, because, other than a minor overlap, those sales are in different watersheds from the Cottonwood timber sale.

As to the possible expansion of the National Monument, BLM states there are currently no formal or informal proposals to do so. As to wilderness character, BLM determined the sale area lands do not possess the defining features that would support such a classification. BLM notes, for example, that the effects of previous logging are visible, and that a large power line, with a right of way, cuts through the sale area.

I conclude that plaintiffs have not shown a likelihood of success on their cumulative effects claim. BLM's analysis of cumulative effects, and its conclusion that timber sales in other watersheds were not relevant, are agency determinations generally entitled to deference. Neighbors of Cuddy Mountain v. Alexander,

303 F.3d 1059, 1071 (9th Cir. 2002) ("we defer to an agency's determination of the scope of its cumulative effects review").

As to possible inclusion of the sale area in the National Monument, NEPA does not require that the agency speculate on future events.  Only "reasonably foreseeable" projects need be included in the cumulative impacts analysis.  Envtl. Prot. Info. Ctr. v. U.S. Forest Serv., 451 F.3d 1005, 1014 (9th Cir. 2006).

The parties dispute whether the Cottonwood sale will cause a net decrease or increase in the miles of roads on the site.  I conclude that the Decision Record adequately discloses the amount of road construction.

### 3.  Mistletoe-Infected Trees

Plaintiffs contend that BLM failed to take a hard look at the consequences of logging mistletoe-infected Douglas fir.  The EA acknowledges that mistletoe-infected trees provide habitat for spotted owls and raptors, but concludes "the limited removal of select trees with mistletoe" will not significantly reduce the availability of such trees for wildlife to use.  Plaintiffs contend that this conclusion is unsupported because the EA does not specify the location or number of infected trees that will be logged.  Defendants respond that the EA includes strict guidelines for logging mistletoe trees based on the extent of the infection, and that few such trees will be logged.

NEPA requires that the agency take a "hard look" at possible

environmental consequences of a federal action, including foreseeable effects, direct or indirect.  Pac. Rivers Council v. U.S. Forest Serv., 689 F.3d 1012, 1024 (9th Cir. 2012).  Here, I conclude plaintiffs are unlikely to prevail on this claim.  The EA limits logging mistletoe-infected trees, and defendants presented evidence that few such trees will be harvested.

The parties dispute the effects of allowing logging of selected trees greater than 21 inches diameter at breast height (dbh).  The EA explains that a limited number of such trees will be logged to encourage healthier stands by allowing the largest trees to thrive.  The EA uses a "stand visualization system" to project the effects of logging.  Because this court should not second-guess BLM's scientific expertise on silviculture, plaintiffs are unlikely to succeed on this claim.

### 4.  Scientific Studies

Plaintiffs contend the EA improperly failed to consider four scientific studies.  Plaintiffs argue that the four studies they cite "undermine the assumption that eliminating fire, insects, and disease will improve the sustainability, vigor, and growth in the project area."  Pls.' Mem. at 12.

A court's deference when reviewing an agency's decision "is highest when reviewing an agency's technical analyses and judgments involving the evaluation of complex scientific data within the agency's technical expertise."  League Of Wilderness

<u>Defenders Blue Mountains Biodiversity Project v. Allen</u>, 615 F.3d 1122, 1130 (9th Cir. 2010).  A court should not instruct an agency on scientific issues, or choose scientific studies, or order "the agency to explain every possible scientific uncertainty."  <u>Lands Council</u>, 537 F.3d at 988.  "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."  <u>Id.</u> at 1000 (internal citations and quotation marks omitted).

In the EA, BLM cited a recent study concluding thinning may reduce bark beetle mortality in mixed conifer forests like the Cottonwood sale area.  BLM rejected as fatally flawed a study concluding thinning cannot control bark beetles or defoliators after an outbreak occurs, and that logging could increase the possibility of outbreaks in the long run.  BLM notes that the Cottonwood timber sale is not designed primarily to address problems caused by insects or disease.

This court must defer to the agency's determinations "so long as those conclusions are supported by studies '*that the agency deems reliable.*'"  <u>Native Ecosystems Council v. Weldon</u>, ___ F.3d ___, 2012 WL 4215919, at *5 (9th Cir. Sept. 21, 2012) (quoting <u>N. Plains Res. Council v. Surface Transp. Bd.</u>, 668 F.3d 1067, 1075 (9th Cir. 2011)) (emphasis added by <u>Native</u>

Ecosystems).  Given the deference this court must give to an
agency's analysis of scientific evidence, I conclude that
plaintiffs have not shown they are likely to succeed on this
claim.

### B.  **FLPMA Claim**

"FLPMA requires that the BLM, under the Secretary of the
Interior, 'develop, maintain, and when appropriate, revise land
use plans' to ensure that land management be conducted 'on the
basis of multiple use and sustained yield.'" Or. Natural Res.
Council Fund v. Brong, 492 F.3d at 1125 (quoting 43 U.S.C. §§
1701(a)(7), 1712(a)).  To comply with this requirement, the
Secretary creates Resource Management Plans (RMPs) to guide
development and maintenance of public land.  The Cottonwood
timber sale is subject to the BLM's Medford District RMP, and to
the Northwest Forest Plan.

Here, plaintiffs contend the Cottonwood timber sale would
violate the Medford District RMP because of the possible effect
on the Pacific fisher, which is a candidate for listing under the
Endangered Species Act.  The Medford District RMP requires that
BLM manage the district "so as not to contribute to the need to
list [species] and to contribute to the recovery of the species."
The RMP also requires that BLM modify, relocate, or abandon
proposed actions that would contribute to the need to list
federal candidate species or their habitats.  BLM has detected

13- ORDER

fishers in the sale area.

BLM responds that the Cottonwood timber sale will not contribute to the need to list the Pacific fisher.  BLM states the timber sale will leave large snags and coarse wood, which fishers use for dens, and that only 17% of fisher habitat will be directly affected.  In BLM's analysis, the short-term effects of the sale will be outweighed by the long-term benefit to the fisher from a healthier forest.

BLM argues that compliance with the RMP should be analyzed for the entire district, not project by project.  Plaintiffs respond that even if the impact on the fisher is only "minimal," then the timber sale will contribute to the need to list the fisher, and not contribute to the fisher's recovery.

FLPMA gives BLM "a great deal of discretion in deciding how to achieve" compliance with an RMP.  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004).  BLM minimized the sale's immediate impact on fisher habitat, and has determined that the sale will enhance fisher habitat in the near future.  I conclude that plaintiffs are not likely to succeed on their FLPMA claim.

To the extent plaintiffs assert a NEPA violation based on the sale's possible effect on fisher habitat, I conclude plaintiffs have not shown they are likely to prevail.  In a similar context, this court has held that an EIS is not required to analyze "every applicable environmental law."  LOWD v. U.S.

Forest Serv., ___ F. Supp. 2d ____, 2012 WL 3255083, at *13 (D.
Or. Aug. 10, 2012) (footnote omitted) (NEPA did not require EIS
to include detailed discussion of the National Forest Management
Act).

## II.   Plaintiffs Have Not Shown Irreparable Harm

Plaintiffs have not shown they are likely to suffer
irreparable harm if the Cottonwood timber sale is not enjoined.
BLM has determined that the sale area is not pristine wilderness,
and the remaining old-growth stands will not be logged.  BLM has
also determined that allowing the harvest of a limited number of
trees of 21" dbh will lead to healthier stands.  BLM concluded
that the sale will not significantly harm the fisher.

## III.   Plaintiffs Have Not Shown That the Balance of Harms or Public Interest Favors Injunctive Relief

In balancing the harms, this court must weigh the potential
environmental injuries asserted by plaintiffs against the risks
from enjoining the sale.  Lands Council, 537 F.3d at 1004.  BLM
asserts that proceeding with the sale will promote forest health,
not harm it.  Potential environmental harm does not necessarily
justify an injunction, "particularly where . . . the plaintiffs
are not likely to succeed on the merits of their claims."  Id. at
1005.  Plaintiffs have not shown that the balance of harms weighs
in their favor.

BLM asserts a public interest in achieving the sale's
objectives.  On the other hand, plaintiffs have not shown that

15- ORDER

they are likely to succeed on the merits of their claims that BLM
violated NEPA or FLPMA.  Plaintiffs have not carried their burden
to show the public interest favors injunctive relief.

### CONCLUSION

Plaintiffs' motion for a preliminary injunction (#14) is
denied.

IT IS SO ORDERED.


DATED this __9__ day of October, 2012.

OWEN M. PANNER
U.S. DISTRICT JUDGE


16- ORDER