S. AMANDA MARSHALL
United States Attorney
District of Oregon
STEPHEN J. ODELL, OR Bar No. 90353
Assistant U.S. Attorney
U.S. Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
steve.odell@usdoj.gov

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
ALISON D. GARNER, DC Bar No. 983858
JASON A. HILL, DC Bar No. 477543
Trial Attorneys
U.S. Department of Justice
Natural Resources Section
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:  (Garner) 202-514-2855; (Hill) 202-514-1024
Facsimile:  (202) 305-0506
alison.garner@usdoj.gov; jason.hill2@usdoj.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
MEDFORD DIVISION

| | | |
|---|---|---|
| SODA MOUNTAIN WILDERNESS COUNCIL; OREGON WILD; KLAMATH SISKIYOU WILDLANDS CENTER; CENTER FOR BIOLOGICAL DIVERSITY; and CASCADIA WILDLANDS PROJECT, | ) ) ) ) ) | Case No. 1:12-cv-01171-CL |
| Plaintiffs, | ) ) ) ) | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR STAY PENDING APPEAL** |
| v. | ) ) | |
| UNITED STATES BUREAU OF LAND MANAGEMENT, | ) ) ) | |
| Defendant. | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................1

LEGAL BACKGROUND ............................................................................................2

      A.     Stay Pending Appeal Standard................................................................. 2

      B.     National Environmental Policy Act ......................................................... 3

      C.     Federal Land Policy Management Act  ....................................................4

      D.     Administrative Procedure Act................................................................. 5

ARGUMENT .................................................................................................................6

   I.    Plaintiffs Cannot Show a Likelihood of Success on the Merits............................ 6

      A.     BLM Fully Complied with its NEPA Obligations.......................................6

             1.     BLM adequately analyzed and disclosed the impacts of mistletoe harvest .........................................................................7

             2.     BLM considered reasonable range of alternatives........................11

      B.     The Project Is Consistent with FLPMA and the Medford RMP...............13

             1.     The Project will not have significant effects on Pacific fisher prey .....................................................................................15

             2.     The Project is consistent with Medford RMP guidance regarding canopy closure .....................................................16

             3.     The Project will result in a net reduction in road density........................................................................................16

              4.     The Project meets RMP guidance related to the Pacific fisher ...................................................................................17

   II.    Plaintiffs Cannot Demonstrate They Are Likely to Suffer Irreparable Harm Absent a Stay Pending Appeal...................................................................18

   III.    The Public Interest and Balance of the Equities Weighs Against Injunctive Relief ......................................................................................................20

i

A.      The Public Interest Does Not Favor an Injunction ...................................20

B.      The Balance of Harms Weighs Against Injunctive relief .........................22

CONCLUSION...................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ....................................................................18

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987)...........................................................................18, 22

*Barnes v. U.S. Dep't of Transp.*,
    655 F.3d 1124 (9th Cir. 2011) ..............................................................11, 12

*Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*,
    524 F.3d 938 (9th Cir. 2008) .....................................................................12

*Blue Mountains Biodiversity Project v. Blackwood*,
    161 F.3d 1208 (9th Cir. 1998) .....................................................................4

*Butler v. Principi*,
    244 F.3d 1337 (Fed. Cir. 2001)....................................................................9

*Cal. Native Plant Soc'y v. U.S. EPA*,
    2007 WL 2021796 (N.D. Cal. July 10, 2007)..........................................15, 17

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) .....................................................................19

*Churchill Cnty. v. Norton*,
    276 F.3d 1060 (9th Cir. 2001) .....................................................................7

*Ctr. for Biological Diversity v. Salazar*,
    695 F.3d 893 (9th Cir. 2012) ..............................................................11, 12

*Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*,
    655 F.3d 1000 (9th Cir. 2011) ...................................................................12

*Earth Island Inst. v. U.S. Forest Serv.*,
    697 F.3d 1010 (9th Cir. 2012) ..............................................................12, 13

*Earth Island Institute v. Carlton*,
    626 F.3d 462 (9th Cir. 2010) ...............................................................5, 14

*Headwaters, Inc. v. BLM*,
    914 F.2d 1174 (9th Cir. 1990) .....................................................................1

*Hilton v. Braunskill,*
    481 U.S. 770 (1987)................................................................3

*Humane Soc'y of U.S. v. Gutierrez,*
    527 F.3d 788 (9th Cir. 2008) ....................................................3

*Idaho Conservation League v. Mumma,*
    956 F.2d 1508 (9th Cir. 1992) ...............................................7, 8

*Indep. Acceptance Co. v. California,*
    204 F.3d 1247 (9th Cir. 2000) ..................................................5

*Kern Cnty. Farm Bureau v. Allen,*
    450 F.3d 1072 (9th Cir. 2006) ..................................................5

*Kern v. U.S. Bureau of Land Mgmt.,*
    284 F.3d 1062 (9th Cir. 2002) ..................................................7

*Lands Council v. McNair,*
    537 F.3d 981 (9th Cir. 2008) ........................................ 4, *passim*

*League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Allen,*
    615 F.3d 1122 (9th Cir. 2010) ..................................................4

*Lopez v. Heckler,*
    713 F.2d 1432 (9th Cir. 1983) ..................................................2

*McCrary v. Gutierrez,*
    495 F. Supp. 2d 1038 (N.D. Cal. 2007) ......................................9

*Modesto Irrigation Dist. v. Gutierrez,*
    619 F.3d 1024 (9th Cir. 2010) ..................................................5

*Monsanto Co. v. Geertson Seed Farms,*
    130 S. Ct. 2743 (2010).......................................................19, 22

*N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.,*
    545 F.3d 1147 (9th Cir. 2008) ............................................11, 12

*Nat'l Parks & Conservation Assoc. v. Babbitt,*
    241 F.3d 722 (9th Cir. 2001) ...................................................3

*Native Ecosys. Council v. U.S. Forest Serv.,*
    428 F.3d 1233 (9th Cir. 2005) ............................................11, 12

*Nken v. Holder*,
　　556 U.S. 418 (2009)...................................................................................................3

*Norton v. S. Utah Wilderness Alliance*,
　　542 U.S. 55 (2004)...................................................................................................5

*Pub. Interest Research Group of Mich. v. Brinegar*,
　　517 F.2d 917 (6th Cir. 1975) ................................................................................21

*River Runners for Wilderness v. Martin*,
　　593 F.3d 1064 (9th Cir. 2010) ............................................................................5, 6

*Robertson v. Methow Valley Citizens Council*,
　　490 U.S. 332 (1989)...................................................................................................3

*Salmon River Concerned Citizens v. Robertson*,
　　32 F.3d 1346 (9th Cir. 1994) ..................................................................................3

*Save the Peaks Coal. v. U.S. Forest Serv.*,
　　2011 WL 671766 (D. Ariz. Feb. 18, 2011)............................................................2

*Save the Yaak Comm. v. Block*,
　　840 F.2d 714 (9th Cir. 1988) ..................................................................................4

*Sierra Club v. Espy*,
　　38 F.3d 792 (5th Cir. 1994) ..................................................................................13

*Small v. Operative Plasterers' & Cement Masons' Int'l*,
　　611 F.3d 483 (9th Cir. 2010) ................................................................................18

*Tribal Vill. of Akutan v. Hodel*,
　　859 F.2d 662 (9th Cir. 1988) ............................................................................2, 18

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*,
　　435 U.S. 519 (1978)..............................................................................................3, 12

*Weinberger v. Romero-Barcelo*,
　　456 U.S. 305 (1982)................................................................................................22

*Winter v. Natural Res. Def. Council*,
　　555 U.S. 7 (2008).................................................................................3, 18, 20, 22

*Yakus v. United States*,
　　321 U.S. 414 (1944)................................................................................................22

**STATUTES**

5 U.S.C. § 701 ............................................................................................................6

5 U.S.C. § 706(2)(A) ...................................................................................................5

42 U.S.C. § 4332(2)(C) ...............................................................................................3

42 U.S.C. §§ 4332(2)(c), (e) .....................................................................................11

43 U.S.C. § 1181a ........................................................................................................1

43 U.S.C. §§ 1712(a), (c)(1) .......................................................................................4

43 U.S.C. § 1732(a) .....................................................................................................4

**RULES**

Fed. R. Civ. P. 65(b)(1)(A) .......................................................................................19

**REGULATIONS**

40 C.F.R. § 1501.4 ......................................................................................................3

40 C.F.R. §§ 1501.4, 1508.13 .....................................................................................4

40 C.F.R. § 1502.14(a) ..............................................................................................11

40 C.F.R. § 1508.9 ......................................................................................................4

40 C.F.R. § 1508.9(b) ................................................................................................11

43 C.F.R. § 1601.0-5(b) ..............................................................................................4

43 C.F.R. § 1610.5-3(a) ..............................................................................................4

69 Fed. Reg. 18770 (Apr. 8, 2004) ......................................................................13, 14

## INTRODUCTION

Plaintiffs claim that Defendant, the U.S. Bureau of Land Management (BLM or Agency) violated the National Environmental Policy Act (NEPA), the Federal Land and Policy Management Act (FLPMA), and the Administrative Procedure Act (APA) in issuing a decision on the Cottonwood Timber Management Project (Project) on the BLM Medford District. This Court has already denied Plaintiffs' motion for preliminary injunction, ECF No. 42, yet Plaintiffs again seek the extraordinary remedy of a stay pending appeal barring BLM from proceeding with the Project. Plaintiffs have failed to demonstrate any of the four factors necessary to justify the requested relief. Plaintiffs have not shown they will suffer irreparable harm in the absence of the requested relief, nor have they shown a likelihood of success on the merits of their case. Furthermore, the public interest and balance of harms weigh against the requested relief. The Court should deny Plaintiffs' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The Cottonwood Forest Management Project is a project on BLM Matrix lands and O&C lands[1] on the BLM Medford District, Ashland Resource Area. AR02203. The objective of the Project is to: 1) ensure sustainable forest production by managing forests to improve conifer forest vigor and growth, and reduce the risk of stand loss from forest fire, animals, insects, and disease; 2) provide forest products from the Matrix land allocation; 3) maintain stand structure for nesting, roosting, foraging, and dispersal habitat components within spotted owl habitat; and 4) maintain a transportation system within the Project area. *Id*. The Project will conduct

---

[1] "Matrix" lands are defined as lands allocated for production and utilization of forest resources. AR24010. Portions of the area are governed by the provisions of the Oregon & California Railroad and Coos Bay Wagon Road Grant Lands Act (O&C Act) of 1937, 43 U.S.C. § 1181a. *See also* AR02203. Timber is a dominant use on lands governed by the O & C Act. 43 U.S.C. § 1181a. *See also Headwaters, Inc. v. BLM*, 914 F.2d 1174, 1183 (9th Cir. 1990).

thinning on 725 acres utilizing tractor and cable yarding.  AR00928.  *See also* AR02320-21 (photos).  Precommercial thinning is proposed on 16 acres.  *Id.*  The Project will occur on 17 percent of existing northern spotted owl suitable habitat in the Project area and will maintain all existing northern spotted owl habitat.  AR02297.

BLM prepared an Environmental Assessment (EA) for the Project, AR02192-395.  The Agency issued a Finding of No Significant Impact (FONSI), AR00927-37, and authorized the Project with a Decision Record (DR) on August 23, 2011, AR00938-45.

Plaintiffs filed a motion for preliminary injunction on August 27, 2012, seeking to halt implementation of the Project.  ECF No. 14.  Plaintiffs claimed BLM violated NEPA by failing to take a hard look at the environmental consequences of harvesting trees infected with mistletoe and failing to analyze a reasonable range of alternatives, and violated FLPMA because the Project will allegedly adversely affect the Pacific fisher.  On October 9, 2012, the Court denied Plaintiffs' motion, finding Plaintiffs had failed to show a likelihood of success on the merits of their claims.  ECF No. 42 (PI Order).

## LEGAL BACKGROUND

### A.  Stay Pending Appeal Standard

 "In deciding whether to grant an injunction pending appeal, courts apply the standard used when considering a motion for a preliminary injunction."  *Save the Peaks Coal. v. U.S. Forest Serv.*, No. 09-cv-8163, 2011 WL 671766, at *2 (D. Ariz. Feb. 18, 2011) (citing *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988), and *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)).  Those factors are:

> (1) whether the [injunction] applicant has made a strong showing that he is likely
> to succeed on the merits; (2) whether the applicant will be irreparably injured
> absent [an injunction]; (3) whether issuance of the [injunction] will substantially

injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see Humane Soc'y of U.S. v. Gutierrez*, 527 F.3d 788, 789–90 (9th Cir. 2008). The party seeking the injunction must demonstrate all four factors. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 19-20 (2008). When the party opposing an injunction is the Government, the latter two factors merge. *Nken v. Holder*, 556 U.S. 418, 435-36 (2009).

**B. National Environmental Policy Act**

NEPA serves the dual purpose of informing agency decision-makers of the environmental effects of proposed federal actions and ensuring that relevant information is made available to members of the public so that they "may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). NEPA's mandate to agencies is "essentially procedural . . . . It is to insure a fully informed and well-considered decision . . . ." *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 558 (1978). "[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Robertson*, 490 U.S. at 350; *see also Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355-56 (9th Cir. 1994).

NEPA requires federal agencies to prepare an environmental impact statement (EIS) for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); *see also Nat'l Parks & Conservation Assoc. v. Babbitt*, 241 F.3d 722, 730 (9th Cir. 2001). To determine whether an EIS is required, an agency may prepare a less detailed EA. *See* 40 C.F.R. § 1501.4; *Salmon River*, 32 F.3d at 1356. An EA is a concise public document that briefly describes the proposal, examines alternatives, considers environmental

impacts, and provides a list of individuals and agencies consulted.  40 C.F.R. § 1508.9.  If an EA leads the agency to conclude that the proposed action will not significantly affect the environment, then the agency may issue a FONSI and forego the further step of preparing an EIS.  *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998).  *See also* 40 C.F.R. §§ 1501.4, 1508.13.  The FONSI is accompanied by "'a convincing statement of reasons' to explain why a project's impacts are insignificant."  *Blue Mountains*, 161 F.3d at 1212 (quoting *Save the Yaak Comm. v. Block*, 840 F.2d 714, 717 (9th Cir. 1988)).

Courts are not to substitute their judgment for that of the agency.  *League of Wilderness Defenders-Blue Mountains Biodiversity Project (LOWD) v. Allen*, 615 F.3d 1122, 1130 (9th Cir. 2010).  Rather, courts:

> reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (quotation and citations omitted).

## C.  Federal Land Policy Management Act

FLPMA establishes requirements for land use planning on land BLM manages.  The Secretary of the Interior is required to "develop, maintain, and, when appropriate, revise land use plans which provide by tracts or areas for the use of the public lands."   43 U.S.C. at § 1712(a), (c)(1).  Once a Resource Management Plan (RMP) is developed, the Secretary manages the public lands in accordance with that plan.  *See id.* § 1732(a); 43 C.F.R. § 1610.5-3(a). A project will be deemed to be in conformance with a land use plan where it is "clearly consistent with the terms, conditions, and decisions of the approved plan . . . ."  43 C.F.R. § 1601.0-5(b).  FLPMA

"leaves BLM a great deal of discretion in deciding how to achieve" objectives in a RMP.  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004).

Here, BLM manages its lands pursuant to the Medford District RMP.  The Project is also governed by the "Standards and Guidelines for Management of Habitat for Late-Successional and Old-Growth Forest Related Species within the Range of the Northern Spotted Owl," more commonly known as the "Northwest Forest Plan" (NFP), AR24002-232, adopted in 1994, AR24079.

### D. Administrative Procedure Act

"In deciding whether [a plaintiff] is likely to succeed on the merits of its motion for a preliminary injunction, the APA sets forth additional requirements for review."  *Earth Island Institute v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010).  "The APA states, in relevant part, that a reviewing court may set aside only agency actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id*. (quoting 5 U.S.C. § 706(2)(A)).  This standard is "highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision."  *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)); *Lands Council*, 537 F.3d at 993 (citation and quotations omitted).  The Ninth Circuit is clear that courts must uphold a reasonable agency action "even if the administrative record contains evidence for and against its decision."  *Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1036 (9th Cir. 2010) (citation omitted).

The Ninth Circuit recently reinforced these principles in *River Runners for Wilderness v. Martin*, 593 F.3d 1064 (9th Cir. 2010).  In that case, the Ninth Circuit explained that a plaintiff must satisfy a "high threshold" to set aside federal agency actions under the APA.  *Id*. at 1067.

The court noted that "[t]he court's task is not to make its own judgment," because "Congress has delegated that responsibility to the [agency.]" *Id.* at 1070. Instead, "[t]he court's responsibility is narrower: to determine whether the [agency's action] comports with the requirements of the APA, 5 U.S.C. § 701 et seq." *Id.* Importantly, the Court of Appeals specifically held that "[t]he [agency's] action . . . need only be a reasonable, not the best or most reasonable, decision." *Id.* (citation omitted). The APA does not allow a court to overturn an agency decision because it disagrees with the decision or with the agency's conclusions about environmental impacts. *Id.*

ARGUMENT

## I. Plaintiffs Cannot Show a Likelihood of Success on the Merits

The Court has already found that Plaintiffs have failed to show they are likely to succeed on the merits of their NEPA or FLPMA claims. *See* PI Order. Plaintiffs have not demonstrated any persuasive basis on which the Court should reconsider its prior denial of Plaintiffs' request for preliminary injunctive relief. The Cottonwood Project EA adequately analyzed the effects of the Project and the Project is consistent with FLPMA and the Medford RMP. The Court should deny Plaintiffs' motion for injunctive relief pending appeal.

A. BLM Fully Complied with its NEPA Obligations

Plaintiffs claim BLM violated NEPA by failing to take a hard look at the environmental consequences of harvesting trees infected with mistletoe and failing to analyze a reasonable range of alternatives. In ruling on Plaintiffs' motion for preliminary injunction, the Court found that Plaintiffs were not likely to succeed on the merits of these claims. PI Order at 5-13. BLM fully complied with its NEPA obligations and Plaintiffs' claims lack merit.

1.  **BLM adequately analyzed and disclosed the impacts of mistletoe harvest**

Plaintiffs argue BLM failed to take a "hard look" at the impacts of harvesting trees infected with mistletoe because BLM did not disclose the precise number of mistletoe trees to be harvested.  Pls.' Mem. in Supp. of Mot. for Stay (Pls.' Br.) at 9, ECF No. 62.  In denying the motion for preliminary injunction, the Court noted that the EA limits timber harvest on trees infected with mistletoe, that few such trees will be harvested, and found Plaintiffs are unlikely to prevail on the merits of this claim.  PI Order at 11.  The Court's prior ruling was correct.  The Agency is not required to disclose the detailed information that Plaintiffs' have demanded.

In reviewing a challenge to the adequacy of an EA, the court applies a "rule of reason" to determine whether the agency took a "hard look" at a proposed action by preparing a "reasonably thorough discussion of the significant aspects of probable environmental consequences."  *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1071 (9th Cir. 2002) (internal quotation marks and citation omitted).  The court makes "a pragmatic judgment whether the [EA's] form, content and preparation foster both informed decision-making and informed public participation."  *Churchill Cnty. v. Norton*, 276 F.3d 1060, 1071 (9th Cir. 2001) (citation omitted).  Once a reviewing court is "satisfied that a proposing agency has taken a 'hard look' at a decision's environmental consequences, [its] review is at an end."  *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1519 (9th Cir. 1992) (citation omitted).

Douglas-fir dwarf mistletoe is a parasitic plant that infects Douglas-fir and is one of the primary diseases that affects the growth and health of Douglas fir.  AR02309.  It is widespread throughout Southern Oregon dry forests.  AR02323.  Infections are usually systemic and form bunched growths of branches called "witches' brooms."  *Id*.  These brooms induce changes in the physiological structure of the tree to allow food to get to the parasite.  *Id*.  Heavy infections

result in growth loss, wood quality reduction, top-killing and mortality. *Id.* Although the spread of the infection is slow, infected trees lose vigor, making them more susceptible to other infectious diseases and insect attack. *Id.* However, there are benefits to wildlife and wildlife habitat from dwarf mistletoe. AR02323. In the Siskiyou Mountains, large witches' brooms serve as nest platforms for spotted owls and raptors. *Id.*

The Project does not attempt to eradicate dwarf mistletoe from the area. Instead, it attempts to minimize mistletoe in specific areas, reducing the impacts on treated forest stands by encouraging resistant species, slowing the spread of disease, and improving the health of forest stands in the long term. AR02323. Management efforts are focused on minimizing the impacts of dwarf mistletoe by maximizing tree species diversity and by reducing canopy layering. *Id.* Stands composed of mixed tree species of all classes provide barriers that inhibit the spread of mistletoe. Many tree species present in the Project area are not susceptible to Douglas-fir dwarf mistletoe. *Id.* Suppressed and intermediate size classes of Douglas-fir are targeted for removal, reducing the canopy height structure and reducing the potential for the vertical spread of mistletoe. *Id.* Moreover, mistletoe is common throughout the Project area, watershed and surrounding watersheds. The limited removal of selected trees in the Project area will not significantly change the availability of mistletoe structures in the watershed and surrounding watersheds for use by wildlife species in these areas. AR02374.

Plaintiffs have not pointed to any requirement that mandates BLM disclose the precise number of mistletoe infected trees – or any trees, for that matter – to be harvested. No such requirement exists. Public disclosure and Agency consideration of the exact number of diseased trees to be removed is not necessary for a reasoned choice among alternatives for a project where

8

the objectives are to manage a several-hundred acre landscape, not individual diseased trees. AR02220.

Plaintiffs also argue, without support, that "a significant number of mistletoe-infected trees will be removed." Pls.' Br. at 13. Plaintiffs' assertion is not supported by the record. The EA makes clear that mistletoe trees should only be selected for harvest under certain limited circumstances.

> These stand level prescriptions promote the removal of the most severely infected trees and selects trees to remove that are least likely to create a greater sunlight environment around the least infected tree crowns. Silviculture objectives desired from treatment include the retention of trees that create diversified stand structure (height, age, and diameter classes) and species composition, so the eradication of the parasite is not desired.

AR02392.[2] *See also* AR02323 (explaining that the Project "does not attempt to eradicate dwarf mistletoe from the landscape; rather it attempts to minimize it in specific areas.").

Plaintiffs also claim BLM failed to collect "any" information related to the harvest of mistletoe trees. Pls.' Br. at 13. The record does not support Plaintiffs' assertion. The EA is replete with information about mistletoe and the potential environmental effects to mistletoe from the Project. *See*, *e.g.*, AR02220-23; AR02294; AR02297; AR02315; AR02374-76; AR02392.

Plaintiffs also argue that the Project removes "the best quality [nesting, roosting and foraging] habitat" by removing mistletoe-infected trees. Pls.' Br. at 10-11. Again, the record does not support Plaintiffs' assertion. The treatments—including removal of select mistletoe-

---

[2] BLM is entitled to a presumption of regularity in its authorization to harvest only select, infested trees. *See*, *e.g.*, *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (well-established doctrine allows courts to presume that, when reviewing agency procedures, "what appears regular is regular," with the burden shifting to the party challenging the action to show otherwise); *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) ("[i]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties" with regularity and in good faith).

infected trees – would not downgrade or remove any existing northern spotted owl nesting,

rooting and foraging or dispersal habitat.  AR02297.    The Project is also consistent with the

RMP and the Northern Spotted Owl Recovery Plan.  AR02203.  Recovery Action Item #32 of

the Plan requires all complex mature and old growth stands to be set aside from timber harvest.

AR02245.  All stands that met the intent of Recovery Action Item #32 were removed from

consideration for timber harvest in the Project.  *Id*.  BLM does not, as Plaintiffs argue, attempt to

"average[e]" [northern spotted owl] habitat over the "entire landscape."  Pls.' Br. at 12.  Rather,

the EA discloses the fact that 17 percent of the total suitable northern spotted owl habitat

(nesting, roosting and foraging habitat) located within the analysis area will receive treatments.

AR02297.  In other words, "More than 83% of suitable habitat located within the analysis area

would not receive any treatments," AR02298, and the area that will be treated will be maintained

as suitable northern spotted owl habitat.  *Id*.  The Project promotes the health and vigor of the

remaining stands, thus resulting in the development of a more complex, structurally diverse

forest in the long term, which will ultimately benefit the northern spotted owl and many other

species.  AR02294.

In sum, the limited removal of select trees infected with mistletoe will not significantly

change the availability of mistletoe structures for use by wildlife species in the Project area or

nearby areas.  AR02374.  The Project will not only limit the spread of the infection, but will also

promote a diversified stand structure leaving not only Douglas fir, but also other species which

are not susceptible to infection, all without compromising canopy cover and the availability of

nesting structures necessary for northern spotted owl habitat.  AR02294; AR02315; AR02323;

AR02374; AR02388; AR02392.  The Court noted in its decision denying Plaintiffs' preliminary

injunction motion that it should not second-guess BLM's scientific expertise on silviculture.  PI

Order at 11.  The EA includes a legally adequate discussion of the potential environmental impacts from harvesting mistletoe.  Plaintiffs' claim fails.

### 2.  BLM considered a reasonable range of alternatives

Plaintiffs argue BLM violated NEPA by failing to consider a reasonable range of alternatives in the EA because the Agency did not consider an alternative that avoids road construction.  Pls.' Br. at 16.  The Court already found that Plaintiffs are unlikely to succeed on the merits of this claim and that BLM considered a reasonable range of alternatives.  PI Order at 8.  Plaintiffs' claim fails because BLM analyzed a reasonable range of alternatives.

NEPA requires a federal agency to give a "detailed statement . . . on . . . alternatives to the proposed action" and to "study, develop, and describe appropriate alternatives . . . ."  42 U.S.C. § 4332(2)(c), (e).  This provision applies whether an agency is preparing an EIS or an EA.  *Native Ecosys. Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1245 (9th Cir. 2005).  However, "an agency's obligation to consider alternatives under an EA is a lesser one than under an EIS."  *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 915 (9th Cir. 2012) (quoting *Native Ecosys. Council*, 428 F.3d at 1246).  "Whereas with an EIS, an agency is required to 'rigorously explore and objectively evaluate all reasonable alternatives,' *see* 40 C.F.R. § 1502.14(a), with an EA, an agency is only required to include a brief discussion of reasonable alternatives.  *See* 40 C.F.R. § 1508.9(b)."  *Ctr. for Biological Diversity*, 695 F.3d at 915 (quoting *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp*., 545 F.3d 1147, 1153 (9th Cir. 2008) (alterations omitted).  An EA need only consider alternatives that "advance the purpose of the project."  *Barnes v. U.S. Dep't of Transp.* 655 F.3d 1124, 1136 (9th Cir. 2011) (citation omitted).  "An agency need not . . . discuss alternatives similar to alternatives actually considered, or alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for

11

management of the area." *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 955 (9th Cir. 2008) (internal citation omitted).

The Ninth Circuit has held that NEPA "does not impose a numerical floor on alternatives to be considered." *Native Ecosys .Council*, 428 F.3d at 1246. An agency has discretion to determine which alternatives to analyze in-depth, *Vermont Yankee*, 435 U.S. at 551-52, and an agency's refusal to consider a proposed alternative that does not meet the project's purpose and need is not arbitrary or capricious. *Native Ecosys. Council*, 428 F.3d at 1246; *Barnes*, 655 F.3d at 1136. Courts in the Ninth Circuit have upheld EAs that give detailed consideration to only two alternatives. *See, e.g.*, *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1021-22 (9th Cir. 2012); *Ctr. for Biological Diversity*, 695 F.3d at 916; *N. Idaho Cmty.*, 545 F.3d at 1154; *Native Ecosystems Council*, 428 F.3d at 1246; *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1012-13 (9th Cir. 2011).

Plaintiffs claim BLM should have considered Plaintiffs' proposed alternative to avoid road construction in the Jenny Creek Watershed. Pls.' Br. at 16. BLM considered this proposed alternative, but eliminated it from detailed consideration because it was not consistent with the purpose and need of the Project. This alternative would have eliminated all new road construction, despite BLM's determination that road construction is needed to improve access for forest management. AR02204. The proposed alternative is also contrary to RMP guidance which requires that all silvicultural systems applied to achieve forest stand objectives be economically practical. AR02245. Eliminating road construction would have required timber harvest to be conducted using a helicopter which would make this Project economically infeasible. AR02245-46. If the Project is not economically feasible, then the Project could not be accomplished at all, thus failing to accomplish the purpose and need of the Project. In

addition, failing to accomplish the purpose and need of the project would be inconsistent with the RMP objectives to provide a sustainable supply of timber, manage available lands to promote tree survival and growth, and achieve a balance between wood volume production, quality of wood, and timber value at harvest.  AR22792.  "[I]t makes no sense for agencies to consider alternatives that do not promote the goal or the purpose the agency is trying to accomplish." *Earth Island Inst*., 697 F.3d at 1023 (internal quotation marks and citation omitted).

In addition, "it makes little sense to fault an agency for failing to consider more environmentally sound alternatives to a project which it has properly determined, through its decision not to file an [EIS], will have no significant environmental effects anyway." *Id*. (quoting *Sierra Club v. Espy*, 38 F.3d 792, 803 (5th Cir. 1994)).  Here, the Agency already determined that an alternative involving road construction would not have significant environmental effects, and Plaintiffs did not argue that the Agency should have prepared an EIS on that basis, *supra* 1 n.1.  BLM was not required to analyze an alternative involving no road construction.  Plaintiffs' argument fails.

### B.  The Project Is Consistent with FLPMA and the Medford RMP

Plaintiffs argue that the Project "will contribute to the need to list the [Pacific] fisher," and that the Project "violates" FLPMA.  Pls.' Br. at 5.  The Court has already found that Plaintiffs are unlikely to succeed on this claim and that BLM minimized the impact of the Project on fisher habitat.  PI Order at 14.  BLM reasonably concluded that the Project will not contribute to the need to list the Pacific fisher and the Project is consistent with the Medford RMP.

The Pacific fisher is a candidate species for listing as endangered under the Endangered Species Act.  *See* 69 Fed. Reg. 18770 (Apr. 8, 2004).  Fishers are closely associated with low to mid-elevation forest with a coniferous component, large snags, or decadent live trees and logs for

denning and resting, and a complex physical structure near the forest floor to support adequate prey populations. AR02297. BLM has surveyed potential fisher habitat within the Ashland Resource area and detected fisher in the analysis area. AR02289-90.

The Medford RMP contains guidance related to Federal candidate species like the Pacific fisher. The relevant Objective from the RMP states: "Manage for the conservation of Federal candidate and Bureau-sensitive species and their habitats so as not to contribute to the need to list and to contribute to the recovery of the species." AR22770. Plaintiffs argue the Project is not consistent with this RMP guidance. To the contrary, BLM concluded that the Project would not contribute to the need to federally list the Pacific fisher as threatened or endangered because habitat features, such as large snags and coarse wood, would be retained throughout the Project area, which would provide habitat for denning and resting. AR02298. Less than 17 percent of suitable fisher habitat within the NEPA analysis area would receive thinning treatments, and all the thinning units would maintain suitable fisher habitat features as well. *Id.*

Plaintiffs' interpretation of the RMP objective suggests that *any* impact on Federal-candidate and Bureau-sensitive species and their habitats will contribute to the need to list. That is not the standard. If it were, no project with such habitat could ever move forward. Plaintiffs attempt to place a higher standard on BLM than is required and are attempting to place on BLM requirements not found in the law. Courts have consistently rejected these types of arguments. *See*, *e.g.*, *Lands Council*, 537 F.3d at 993-94; *Carlton*, 626 F.3d at 470.

BLM guidance offers instruction to the Agency for management of Federal-candidate and Bureau-sensitive species. *See* AR18530-77; AR18530-32 (BLM Manual Section 6840 "directs that actions requiring authorization or approval by BLM be consistent with the conservation needs of [special status species] and not contribute to the need to list any [special status species]

14

either under the ESA or other provisions of the BLM Manual 6840.02.").  In other words, the

Medford RMP requires that BLM manage, over time and across the forest, so as to not contribute

to the need to list a species.   The RMP does not require that every action contribute to the

recovery of the species.  AR18531-32.  *See also Cal. Native Plant Soc'y v. U.S. EPA*, No. CO6-

03604-MJJ, 2007 WL 2021796, at *21 (N.D. Cal. July 10, 2007). Importantly, the Cascade-

Siskiyou National Monument (Monument) is also near the Project area.  AR00047.  The

Monument includes lands formally recognized as the Jenny Creek Late Successional Reserve,

AR22715), consisting of over 34,000 acres of fisher habitat.  AR22715.  No timber sales have

taken place within the Monument in the recent past, and none will take place in the future.  *Id*.

The Project is consistent with FLPMA and the Medford RMP and Plaintiffs' claim fails.

### 1.   The Project will not have significant effects on Pacific fisher prey

Plaintiffs argue the Project will significantly impact Pacific fisher prey.  Pls.' Br. at 6.[3]

As discussed previously, the Project will retain key habitat characteristics for the Pacific fisher.

Regarding impacts to the Pacific fisher, the EA states:

> Thinning treatments would have short term adverse effects to habitat for some
> fisher prey species due to the reduced vegetation.  These effects are relatively
> short term, as understory vegetation typically returns within 5 years.  However,
> these short term effects to fisher prey species would be minimal, because the large
> amount of untreated areas within the analysis area would continue to provide
> forage habitat while canopy cover in the treated stands increases.  Additionally,
> these treatments would retain key habitat characteristics such as large snags and
> coarse woody debris to provide existing and future habitat for fishers.

AR02297.  Plaintiffs claim that these minimal short term effects are inconsistent with the

Medford RMP, arguing that there is no "de minimus" exception in FLPMA.  Pls.' Br. at 7.  BLM

---

[3] Plaintiffs attempt to frame the Project as a fuels reduction project, when the record clearly
shows it is not.  *See* AR02203 (purpose and need statement).  *See also* AR09147 (calling for
minimal fuels reduction treatments consisting of small pile burning with underburning
maintenance up to 5 years after harvest.).

does not argue that there is a "de minimus" exception to FLPMA, and no such exception is necessary to find the Project consistent with FLPMA. The standard that the Court must apply—and the question that the Court must address—is whether the Project contributes to the need to list the fisher under the ESA. The fact that the EA admits minimal short term effects to fisher prey does not mean that the Project contributes to the need to list the fisher under the ESA. AR02298. The record demonstrates it will not have significant effects to Pacific fisher prey and will not contribute to the need to list the fisher. Plaintiffs' claim lacks merit.

### 2. The Project is consistent with Medford RMP guidance regarding canopy closure

Plaintiffs argue that the Project "reduces the majority of the project area (i.e. 59.4%) to 40% canopy closure." Pls.' Br. at 7-8. Plaintiffs' assertion is not supported by the record. The Project will not downgrade nesting, roosting and foraging habitat for the northern spotted owl. AR02212; AR02294. The record demonstrates that the Project design features maintain canopy cover in northern spotted owl nesting, roosting and foraging habitat at a minimum of 60 percent, and within dispersal habitat the Project will retain approximately 40 percent canopy closure. AR02220. In other words, the Project maintains 60 percent canopy cover in stands that currently have that level of canopy cover. Any stands currently below 60 percent will be maintained above 40 percent. AR02212; AR02294.

### 3. The Project will result in a net reduction in road density

Plaintiffs claim that road construction and reconstruction will "contribute to the fragmentation" of fisher habitat, apparently arguing this will lead to the need to list the Pacific fisher. Pls.' Br. at 8. Plaintiffs' cherry-picked sentences from the administrative record do not point to anything that shows that the Project—resulting in a net reduction in road density—will contribute to the need to list the Pacific fisher.

16

The Project will construct 1.15 miles of permanent roads and 0.6 miles of temporary roads.  AR00928.  The temporary roads will be decommissioned the same season they are built, and the permanent road will be closed and blocked off after use for harvest.  AR02213.  Similarly, all road "reconstruction" (i.e., road blading only) (4.7 miles) will be blocked off or fully decommissioned after use for the Project.  AR02313-14; AR00520-34.  The Project will also decommission 1.9 miles of existing roads, creating a net reduction in road density of 0.75 miles.  AR00928.

The mere fact that the Project includes some road construction does not mean that fisher habitat will be significantly fragmented, as the road construction will only affect a very small area (2 percent) of land available as suitable fisher denning and resting habitat within the analysis area.  AR02298.  Activities associated with the permanent road construction will last only one harvest season and the road will be closed and blocked off the same season, allowing the area to once again function as suitable fisher habitat.  AR00928.  Decommissioning 1.9 miles of existing roads, *id*., will defragment fisher habitat and make these lands available for future habitat for fisher.  Plaintiffs have not shown that the Project, with a net reduction in road density from the current status, will contribute to the need to list the fisher.

### 4.  The Project meets RMP guidance related to the Pacific fisher

Finally, Plaintiffs argue that BLM has "violated" the RMP standard relating to the fisher because the impacts from the Project "not only contribute to the need to list the fisher, but they also do not contribute to the recovery of the fisher."  Pls.' Br. at 9.  Plaintiffs offer no further argument or support for this conclusory allegation.  Plaintiffs' FLPMA claim fails.  *See Cal. Native Plant Soc'y*, 2007 WL 2021796, *21 ("the fact that a particular project . . . will not further

the recovery of a species . . . does not mean that the project jeopardizes the continued existence

of a species if the project does not actually reduce the likelihood of recovery in the future.").

### II. Plaintiffs Cannot Demonstrate They Are Likely to Suffer Irreparable Harm Absent a Stay Pending Appeal

To succeed on their motion, Plaintiffs must show they are likely to suffer irreparable

harm in the absence of a stay pending appeal. *Winter*, 555 U.S. at 20-21. Due to the

extraordinary nature of the remedy, Plaintiffs must show that irreparable harm is *likely*, not just

possible. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)

(citing *Winter*, 555 U.S. at 22); *see also Small v. Operative Plasterers' & Cement Masons' Int'l*,

611 F.3d 483, 491 (9th Cir. 2010).

Here, Plaintiffs allege that they will suffer "irreparable harm" if the Project is

implemented. Pls.' Br. at 17. Plaintiffs' claim they will suffer harm "from the inability of

Plaintiffs to use and enjoy the project area in an undisturbed state." *Id*. at 2. To support these

claims, Plaintiffs presume harm because they bring claims pursuant to environmental statutes.

The Supreme Court has rejected a presumption of irreparable injury even where an agency fails

to evaluate thoroughly the environmental impact of a proposed action. *Amoco Prod. Co. v. Vill.*

*of Gambell*, 480 U.S. 531, 545–46 (1987). The Ninth Circuit has reaffirmed that irreparable

harm should not be presumed in environmental cases and alleged environmental injuries may in

fact be outweighed by other considerations, including the risks to resources caused by an

injunction of the challenged action. *Lands Council*, 537 F.3d at 1005 (finding that preventing

risks of catastrophic fire, insect infestation, and disease and aiding the struggling local economy

and preventing job loss may outweigh alleged harm to individual species). *See also Tribal Vill.*

*of Akutan*, 859 F.2d at 663-64.

To meet the irreparable injury requirement, a plaintiff must do more than simply allege imminent harm; it must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). This requires a plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b)(1)(A). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine*, 844 F.2d at 674.

The declaration Plaintiffs submit to support their claims of alleged harm offer inaccurate information. For example, the Declaration of George Sexton, ECF No. 63, claims that its members will be harmed by removal of "older trees . . . on these public lands" and cites to extra-record photographs in support. *Id.* ¶ 12. Plaintiffs also claim the Project will harvest "old-growth trees." *Id.* ¶ 15. The EA states that the purchaser should avoid the harvest of old growth trees. AR02221-22; AR16195-96.

Plaintiffs also claim that the Project EA and DR did not analyze impacts to soils or meadows. *Id.* ¶ 13. Plaintiffs did not plead this claim in their Complaint and therefore, it cannot be a basis for irreparable harm. Regardless, the EA is replete with information about potential impacts to soils and meadows. *See*, *e.g.*, AR00458 (recognition that harvest may cause some disturbance to grassy openings and meadows); AR02226 (discussion of tractor yarding and soil moisture conditions); AR02225-26; AR2255; AR2257-59.

Plaintiffs also assert that they are harmed by "BLM's failure to follow the procedures required by law, including the requirement to take a hard look at environmental impacts." Pls.' Br. at 18. The Court should not reach this question because Plaintiffs have failed to show a likelihood of success on the merits. *See Monsanto*, 130 S. Ct. at 2757-58 (holding that even in cases where a NEPA violation has been found, "[a]n injunction should issue only if the

traditional four-factor test is satisfied.") (citing *Winter*, 555 U.S. at 32-34.)  Plaintiffs' claims of irreparable harm are without merit and the Court should deny their motion.

**III. The Public Interest and Balance of the Equities Weighs Against Injunctive Relief**

Plaintiffs argue the balance of the equities favors an injunction, claiming that "if environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment."  Pls.' Br. at 20.  Plaintiffs also claim that the public interest favors an injunction because the public has an interest in compliance with environmental laws.  Pls.' Br. at 22.  The Court has already determined that the balance of harms does not weigh in Plaintiffs' favor.  PI Order at 15.

Plaintiffs have not met their burden to show that a preliminary injunction is in the public interest in this case.  Furthermore, the balance of harms strongly weighs against enjoining the Project.

**A.  The Public Interest Does Not Favor an Injunction**

The public interest weighs against issuing an injunction.  There is a public interest in the objectives of the Project, such as ensuring sustainable forest production, providing forest products from the Matrix land allocation, maintaining components of northern spotted owl habitat, creating jobs, ensuring public safety and maintaining consistency with the Medford RMP.

"[T]he Supreme Court has not established that, as a rule, any potential environmental injury merits an injunction . . . . Our law does not . . .  allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue."  *Lands Council*, 537 F.3d at 1004-05.  Indeed, the Supreme Court has instructed courts not to exercise their equitable powers

"loosely or casually" in cases involving claims of environmental damage. *Id*. at 1005 (internal citation omitted).

The Court has already determined that Plaintiffs have not carried their burden to show the public interest favors injunctive relief. PI Order at 16. Plaintiffs allege that the public has an interest in NEPA compliance. Pls.' Br. at 22. As discussed above, BLM fully complied with its NEPA obligations and Plaintiffs failed to show a likelihood of success on the merits on their NEPA claims.

Plaintiffs have also failed to demonstrate that the claimed potential harm to its members' interests from withholding an injunction is significantly greater than the injury to other segments of the public. *See Lands Council*, 537 F.3d at 1005 ("Though preserving environmental resources is certainly in the public's interest, the Project benefits the public's interest in a variety of other ways."); *see also Pub. Interest Research Group of Mich. v. Brinegar*, 517 F.2d 917, 918 (6th Cir. 1975) ("[T]he district court did not abuse its discretion in denying the preliminary injunction . . . . since any adverse effect upon the environment would appear to be negligible as compared with the obvious need for correcting a dangerous highway intersection."). At most, Plaintiffs, organizations whose missions are "to protect Wildlands and conserve . . . biological diversity in southwestern Oregon," ECF No. 1 at ¶ 16, represent only one segment of the public. But many other members of the public have divergent interests in habitat improvements, public safety, job creation, and timber resources. *See* AR02163-65; AR02245-48 (public comments on the Project). The Project not only protects any interest Plaintiffs have in protecting biodiversity, but also strikes a proper balance protecting these other divergent public interests.

**B.  The Balance of Harms Weighs Against Injunctive relief**

Here, in addition to the harm to the public interest described above, BLM will also suffer

harm should the Project be enjoined.  An injunction could delay the implementation of

silvicultural treatments which are designed to improve conifer forest vigor and growth and

reduce risk of stand loss from fires, animals, insects and disease.  AR02203.  An injunction

would harm BLM's attempts to properly manage the forest in accordance with RMP objectives.

Moreover, there is no presumption of harm where Plaintiffs allege a violation of

environmental statutes, and the public interest standard is a separate consideration in determining

whether to grant equitable relief.  *Monsanto*, 130 S. Ct. at 2757 (rejecting the lower court's

issuance of an injunction as appearing to "presume that an injunction is the proper remedy for a

NEPA violation except in unusual circumstances.  No such thumb on the scales is warranted.").

*See also Amoco Prod.*, 480 U.S. at 545 (same).  The court may deny a preliminary injunction,

even where irreparable injury to the movant exists, if the injunction is contrary to the public

interest.  *See Winter*, 555 U.S. at 22 (holding that even though plaintiffs showed a "near

certainty" of irreparable injury to marine mammals resulting from the Navy's use of mid-

frequency active sonar, that harm was outweighed by the public interest in facilitating effective

naval training exercises); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982)

("[W]here an injunction is asked which will adversely affect a public interest . . . the court may

in the public interest withhold relief . . . though the postponement may be burdensome to the

plaintiff") (quoting *Yakus v. United States*, 321 U.S. 414, 440 (1944)).

When comparing the likely harms described by BLM that will ensue if an injunction

issues with Plaintiffs' very limited allegations of potential harms that are not directly linked to

22

harm to Plaintiffs' interest, along with the public benefits associated with moving forward with the Project, the balance of the harms clearly tips in favor of the Agency.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for stay pending appeal.

Dated: January 7, 2013

Respectfully submitted,

**IGNACIA S. MORENO**
Assistant Attorney General
Environment and Natural Resources Division

*s/Alison D. Garner*
ALISON D. GARNER
JASON A. HILL
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 514-2855
Telephone: (202) 514-1024
alison.garner@usdoj.gov
jason.hill2@usdoj.gov
*Attorneys for Defendant*

**<u>Certificate of Service</u>**

I hereby certify that on January 7, 2013, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will provide service to counsel for Plaintiffs.

<u>s/ Alison D. Garner</u>
Alison D. Garner
*Attorney for Defendant*